**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | |
|---|---|
| **ABIGAYLE PATTERSON** | * |
| 7337 Autumn Sage Dr. | * |
| El Paso, TX 79911 | * |
| | * |
| **BRIAN OTTERS** | * |
| 3705 Beech Tree Cove | * |
| Southaven, MS 38672 | * |
| | * |
| **CHRISTOPHER ITURBE** | * |
| 712 Hezekiah Little Drive | * |
| Virginia Beach, VA 23462 | * |
| | * |
| **DONALD KING** | * |
| 1806 Harlansburg Road | * |
| New Castle, PA 16101 | * |
| | * |
| **LARRY POWELL** | * |
| 808 Buffalo Lane | * |
| Mt. Vernon, IL 62864 | * |
| | * |
| **CATHERINE PERKINS** | * |
| 3240 Groveland Way | * |
| Antelope, CA 95843 | * |
| | * |
| and all others similarly situated, | * |
| | * |
| *Plaintiffs*, | * |
| | * |
| *vs*. | * |  Case No. 1:23-cv-00762 |
| | * |
| **VETERANS GUARDIAN** | * |
| **VA CLAIM CONSULTING, LLC** | * |
| 75 Trotter Hills Cir. | * |
| Pinehurst, NC 28374 | * |
| | * |
|     Serve On: | * |
|     Scott Greenblatt | * |
|     75 Trotter Hills Circle | * |
|     Pinehurst, NC 28374 | * |
| | * |
| | * |
| *Defendant*. | * |

**PLAINTIFFS' THIRD AMENDED**
**CLASS ACTION COMPLAINT AND JURY DEMAND**

COME NOW, Plaintiffs, Abigayle Patterson, Brian Otters, Christopher Iturbe, Donald King, Larry Powell, Catherine Perkins, and all others similarly situated, by and through the undersigned attorneys, and make the following Second Amended Complaint against Defendant Veterans Guardian VA Claim Consulting, LLC ("Veterans Guardian" or "Defendant").

**INTRODUCTION**

1.      This case is brought by and on behalf of honorably discharged United States military veterans who, as a result of their military service to our country, have qualified for the U.S. Department of Veterans Affairs (the "VA") disability benefits and have been charged illegal fees by Defendant in connection with their applications for VA disability benefits.

2.      The VA mandates that all individuals and/or organizations must be accredited by the VA to assist a veteran in the preparation, presentation, and prosecution of a claim for VA disability benefits—even without a charge.

3.      The VA also limits the amount(s) of fees that accredited individuals and/or organizations assisting a veteran in the preparation, presentation, and prosecution of a claim for VA disability benefits can charge for their services.

4.      Defendant is not accredited by the VA.

5.      Even if Defendant were accredited by the VA, the fees Defendant is charging are illegally excessive—a fact that Defendant tries to defeat by stating that

Defendant is not accredited, and therefore is not bound by the rules applicable to accredited providers and can charge disabled veterans illegally excessive fees.

6. **Defendant** also attempts to contort the factual record of the services Defendant provides to veterans by expressly disclaiming that Defendant is assisting veterans in any manner which would require Defendant to be accredited.

7. Specifically, Defendant's contracts state that Defendant complies with federal regulations governing individuals and/or organizations who assist veterans in the preparation, presentation, and prosecution of a claim for VA disability benefits because Defendant provides not "assistance," but "VA benefit pre-filing and post-filing consulting services only." Such a contortion of the facts is patently false.

8. **Defendant** has illegally charged veterans millions of dollars in fees for assisting veterans in the preparation, presentation, and prosecution of claims for VA disability benefits, far in excess of what accredited service providers are authorized to charge by the VA.

9. In fact, the fees illegally charged by Defendant and similar entities and individuals, colloquially known as "claim sharks," have become so problematic that the VA has recently issued numerous cease and desist letters in an attempt to stop the "claim sharks" from charging veterans for their services.

**THE PARTIES**

10. Plaintiff, Abigayle Patterson ("Ms. Patterson"), is an honorably discharged veteran of the U.S. Army, residing at 7337 Autumn Sage Drive, El Paso, Texas 79911.

11. Plaintiff, Brian Otters ("Mr. Otters"), is an honorably discharged veteran of the U.S. Navy, residing at 3705 Beech Tree Cove, Southaven, Mississippi 38672.

3

12.     Plaintiff, Christopher Iturbe ("Mr. Iturbe"), is an honorably discharged veteran of the United States Navy, residing at 712 Hezekiah Little Drive, Virginia Beach, VA 23462.

13.     Plaintiff, Donald King ("Mr. King"), is an honorably discharged veteran of the United States Air Force, residing at 1806 Harlansburg Road, New Castle, PA 16101.

14.     Plaintiff, Larry Powell ("Mr. Powell"), is an honorably discharged veteran of the United States Army, residing at 808 Buffalo Lane, Mt. Vernon, IL 62864.

15.     Plaintiff, Catherine Perkins ("Ms. Perkins"), is an honorably discharged veteran of the United States Navy, residing at 3240 Groveland Way, Antelope, CA 95843.

16.     Defendant, Veterans Guardian VA Claim Consulting, LLC, is a North Carolina limited liability company with a principal place of business at 75 Trotter Hills Circle, Pinehurst, North Carolina, 28374.  Veterans Guardian provides services to U.S. military veterans worldwide, assisting veterans in the preparation, presentation, and prosecution of claims for VA disability benefits.

## JURISDICTION, VENUE, CHOICE OF LAW

17.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are at least 100 members in the proposed Class defined below, the combined claims of the proposed Class members exceed $5,000,000, exclusive of interest and costs, and as discovery will show, more than two thirds of the proposed Class members are citizens of a state other than Veterans Guardian's state of citizenship, North Carolina.

18.     Alternatively, this Court has federal question jurisdiction over this action pursuant to 28. U.S.C. § 1331 as the foundation for the claims made is under the

4

Constitution, laws, or treaties of the United States, specifically 38 U.S.C. § 5901 *et al.* and 38 C.F.R. §§ 14.626 through 14.637, which prohibit non-accredited agents from aiding in the creation and/or submission of disability claims to the VA.

19.     This Court has personal jurisdiction because Defendant deliberately and regularly conducts business, marketing, claim distributing, promoting VA claims assistance and appeals, and/or collections, in North Carolina and has its principal place of business in Pinehurst, North Carolina.  The illegal fees at issue are issued, invoiced, processed, and collected from the State of North Carolina. Defendant has obtained the benefits of the laws of North Carolina and profited handsomely from North Carolina commerce.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Veterans Guardian is a limited liability company subject to personal jurisdiction in this District and does business in this District, and a substantial portion of the acts, events, and/or unlawful activity giving rise to the claims against Defendant occurred in this District.

21.     Finally, Veterans Guardian's contracts with Plaintiffs and the Class include a choice of law and venue provision which reads: "This agreement is entered into and shall be governed by the laws of the State of North Carolina and said states courts shall have exclusive jurisdiction to adjudicate any dispute arising out of or relating to this agreement. …"

**FACTS REGARDING SPECIFIC PLAINTIFF, ABIGAYLE PATTERSON**

22.     Plaintiff, Abigayle Patterson, is a veteran of the U.S. Army.

23.     Ms. Patterson served in the U.S. Army from March 8, 2005 to March 26, 2013 and, as part of her military service, served in Baghdad's Green Zone as an emergency room trauma nurse at the Ibn Sina Hospital.

24.     Ms. Patterson was honorably discharged on March 26, 2013.

25.     On or about July 30, 2021, Ms. Patterson entered into a contract with Veterans Guardian (the "Patterson Contract") to use Veterans Guardian's services in connection with her application for an increase in VA disability benefits.

26.     Ms. Patterson entered into the contract with Veterans Guardian in reliance on Defendant's representations on Defendant's website, vetsguardian.com, that Defendant's "mission [was] to help veterans achieve the ***maximum*** VA rating they have medically earned" and that Defendant would "maximize [Ms. Patterson's] VA disability rating earned through [her] honorable service to the nation."  *See* January 4, 2023 printout of vetsguardian.com Landing Page, attached hereto as **<u>Exhibit A</u>** (emphasis added).

27.     Although Veterans Guardian's website states that Veterans Guardian does not assist clients with the presentation and/or prosecution of claims for VA Benefits (*see* August 21, 2023 printout of Disclaimer from vetsguardian.com (the "Disclaimer"), attached hereto as **<u>Exhibit B</u>**, Ms. Patterson took no part in completing her VA disability benefits forms.

28.     Defendant prepared Ms. Patterson's VA disability benefits claim on behalf of Ms. Patterson.  Defendant selected the appropriate forms, selected the information to be included in the forms, and filled out the data for Ms. Patterson's specific claim.

29.     Defendant focused exclusively on one of Ms. Patterson's health conditions that qualified Ms. Patterson for VA disability benefits and, despite Ms. Patterson's

6

insistence that Defendant include additional health conditions on Ms. Patterson's VA disability benefits claim, Defendant failed and refused to do so.

30. By preparing the VA disability benefits claim forms on behalf of Ms. Patterson, Defendant acted as agent.

31. Defendant then coached Ms. Patterson on how to present her symptoms to the VA medical examiner.

32. The Patterson Contract provided that Defendant would charge Ms. Patterson a consulting fee equal to five (5) times the increase in Ms. Patterson's monthly VA disability benefits obtained with Defendant's assistance.

33. Prior to July 30, 2021, Ms. Patterson had a VA disability rating of 60%.

34. With Defendant's assistance, Ms. Patterson's VA disability rating was increased to 80%.

35. As a result of the increase in Ms. Patterson's VA disability rating from 60% to 80%, Defendant estimated that Ms. Patterson' monthly VA disability benefits would increase by $664.40. *See* June 14, 2022 email from N. Iford to A. Patterson, Invoice Number 21-090831 (the "Patterson Invoice"), attached hereto as **Exhibit C**.

36. On or around June 14, 2022, Defendant billed Ms. Patterson $3,320.00, with a lump sum payment with a 10% discount of 2,988.00. *See* **Exhibit C**, Patterson Invoice.

37. On or around June 14, 2022, Ms. Patterson paid Defendant $2,988.00. *See* Patterson Payment Receipt, attached hereto as **Exhibit D**.

38. After Ms. Patterson discontinued using Defendant's services, Ms. Patterson, on her own and without any assistance from Defendant, applied for another increase in her VA disability benefits based on Ms. Patterson's health conditions that Defendant failed and

7

refused to include on the VA disability benefits claim forms prepared by Defendant on behalf of Ms. Patterson.

39.     Ms. Patterson was then able to achieve an additional increase in her VA disability rating from 80% to 90% and a corresponding increase in the amount of her monthly VA disability payments.

40.     Despite the fact that Ms. Patterson achieved the increase from 80% to 90% disability rating entirely on her own, Defendant sent Ms. Patterson an invoice attempting to collect five times the increase in the monthly payment amount that Ms. Patterson had obtained entirely on her own and without using Defendant's services.

41.     Ms. Patterson refused to pay any additional amounts to Defendant and Defendant ultimately agreed not to charge Ms. Patterson for obtaining the increase from 80% to 90% disability rating entirely on her own.

### FACTS REGARDING SPECIFIC PLAINTIFF, BRIAN OTTERS

42.     Plaintiff, Brian Otters, is a veteran of the U.S. Navy.

43.     Mr. Otters served in the U.S. Navy from June 18, 2004 to January 17, 2011 and was honorably discharged on January 17, 2011.

44.     On or about March 4, 2023, Mr. Otters entered into a contract with Veterans Guardian (the "Otters Contract") to use Veterans Guardian's services in connection with his application for an increase in VA disability benefits.  *See* Otters Contract, attached hereto as **Exhibit E**.

45.     Mr. Otters entered into the contract with Veterans Guardian in reliance on Defendant's representations on Defendant's website, vetsguardian.com, that Defendant's "mission [was] to help veterans achieve the ***maximum*** VA rating they have medically

8

earned" and that Defendant would "maximize [Mr. Otters'] VA disability rating earned through [his] honorable service to the nation." *See* **Exhibit A** (emphasis added).

46.     Defendant prepared Mr. Otters' VA disability benefits claim on behalf of Mr. Otters. Defendant selected the appropriate forms, selected the information to be included in the forms, and filled out the data for Mr. Otters' specific claim.

47.     Defendant focused exclusively on one of Mr. Otters's health conditions that qualified Mr. Otters for VA disability benefits and, despite Mr. Otters' insistence that Defendant include additional health conditions on Mr. Otters' VA disability benefits claim, Defendant failed and refused to do so.

48.     By preparing the VA disability benefits claim forms on behalf of Mr. Otters, Defendant acted as agent.

49.     The Otters Contract provided that Mr. Otters must pay Defendant "compensation equivalent to five (5) times the increase in [Mr. Otters'] monthly compensation that results from Veterans Guardian Pre-Filing consulting services." *See* **Exhibit E**, Otters Contract, at ¶ 3(b).

50.     Prior to March 4, 2023, Mr. Otters had a VA disability rating of 70%.

51.     With Defendant's assistance, Mr. Otters' VA disability rating was increased to 90%.

52.     As a result of the increase in Mr. Otters' VA disability rating from 70% to 90%, Defendant estimated that Mr. Otters' monthly VA disability benefits would increase by $599.33. *See* July 24, 2023 email from S. Saunders to B. Otters, Invoice Number 23-0417102 (the "Otters Invoice"), attached hereto as **Exhibit F**.

53. On about July 24, 2023, Defendant billed Mr. Otters $2,990.00 to be paid in five (5) monthly payments of $598 beginning on August 1, 2023 and ending on December 1, 2023, pursuant to the payment plan in the Otters Contract. *See* **Exhibit F**, Otters Invoice; **Exhibit E**, Otters Contract, at ¶ 4.

54. On or about August 1, 2023, Mr. Otters paid Defendant $598. *See* Otters Payment Receipt, attached hereto as **Exhibit G**.

55. Mr. Otters then attempted to stop payments to Defendant, but Defendant refused to stop charging Mr. Otters the monthly payments.

56. After Mr. Otters discontinued using Defendant's services, Mr. Otters, on his own and without any assistance from Defendant, applied for another increase in his VA disability benefits.

57. Mr. Otters was then, on his own and without any assistance from Defendant, able to achieve an additional increase in his VA disability rating from 90% to 100% and a corresponding increase in the amount of his monthly VA disability payments.

**FACTS REGARDING SPECIFIC PLAINTIFF, CHRISTOPHER ITURBE**

58. Plaintiff, Christopher Iturbe, is a veteran of the United States Navy.

59. Mr. Iturbe served in the United States Navy from March 7, 2017 to March 6, 2023 and was honorably discharged on March 6, 2023.

60. On or about September 6, 2023, Mr. Iturbe entered into a contract with Veterans Guardian (the "Iturbe Contract") to use Veterans Guardian's services in connection with his application for an increase in VA disability benefits. *See* Iturbe Contract, attached hereto as **Exhibit H**.

10

61. Mr. Iturbe entered into the contract with Veterans Guardian in reliance on Defendant's representations on Defendant's website, vetsguardian.com, that Defendant's "mission [was] to help veterans achieve the ***maximum*** VA rating they have medically earned" and that Defendant would "maximize [Mr. Iturbe's] VA disability rating earned through [his] honorable service to the nation." *See* January 4, 2023 printout of vetsguardian.com Landing Page, attached hereto as **Exhibit A** (emphasis added).

62. Although Veterans Guardian's website states that Veterans Guardian does not assist clients with the presentation and/or prosecution of claims for VA Benefits (*see* August 21, 2023 printout of Disclaimer from vetsguardian.com (the "Disclaimer"), attached hereto as **Exhibit B**), Mr. Iturbe took no part in completing his VA disability benefits forms.

63. Defendant prepared Mr. Iturbe's VA disability benefits claim on behalf of Mr. Iturbe. Defendant selected the appropriate forms, selected the information to be included in the forms, and filled out the data for Mr. Iturbe's specific claim.

64. Defendant focused exclusively on one of Mr. Iturbe's health conditions that qualified Mr. Iturbe for VA disability benefits and, despite Mr. Iturbe's insistence that Defendant include additional health conditions on Mr. Iturbe's VA disability benefits claim, Defendant failed and refused to do so.

65. By preparing the VA disability benefits claim forms on behalf of Mr. Iturbe, Defendant acted as agent.

66. The Iturbe Contract provided that Defendant would charge Mr. Iturbe a consulting fee equal to five (5) times the increase in Mr. Iturbe's monthly VA disability benefits obtained with Defendant's assistance.

11

67. Prior to September 6, 2023, Mr. Iturbe had a VA disability rating of 90%.

68. With Defendant's assistance, Mr. Iturbe's VA disability rating was increased to 100%.

69. As a result of the increase in Mr. Iturbe's VA disability rating from 90% to 100%, Defendant estimated that Mr. Iturbe's monthly VA disability benefits would increase by $1,517.34. *See* May 28, 2024 email from R. Locklear to C. Iturbe, Invoice Number 23-090838 (the "Iturbe Invoice"), attached hereto as **Exhibit I**.

70. On about May 28, 2024, Defendant billed Mr. Iturbe $7,580 to be paid in a lump sum or, with a 10% discount, in five (5) monthly payments of $1,516 or ten (10) monthly payments of $758. *See* **Exhibit I**, Iturbe Invoice.

71. Mr. Iturbe has not made any payments to Defendant.

### FACTS REGARDING SPECIFIC PLAINTIFF DONALD KING

72. Plaintiff, Donald King, is a veteran of the U.S. Air Force.

73. Mr. King served in the U.S. Air Force from September 2, 1960 to March 31, 1981, and was honorably discharged on March 31, 1981.

74. On or about November 1, 2021, Mr. King entered into a contract with Veterans Guardian (the "King Contract") to use Veterans Guardian's services in connection with his application for an increase in VA disability benefits. *See* King Contract, attached hereto as **Exhibit J**.

75. Mr. King entered into the contract with Veterans Guardian in reliance on Defendant's representations on Defendant's website, vetsguardian.com, that Defendant's "mission [was] to help veterans achieve the ***maximum*** VA rating they have medically earned" and that Defendant would "maximize [Mr. King's] VA disability rating earned

through [his] honorable service to the nation." *See* **Exhibit A**, January 4, 2023 printout of vetsguardian.com Landing Page (emphasis added).

76. Although Veterans Guardian's website states that Veterans Guardian does not assist clients with the presentation and/or prosecution of claims for VA Benefits (*see* **Exhibit B**, Disclaimer), Mr. King took no part in completing his VA disability benefits forms.

77. Defendant prepared Mr. King's VA disability benefits claim on behalf of Mr. King. Defendant selected the appropriate forms, selected the information to be included in the forms, and filled out the data for Mr. King's specific claim.

78. Defendant focused exclusively on one of Mr. King's health conditions that qualified Mr. King for VA disability benefits. Defendant failed and refused to include any other conditions on Mr. King's VA disability benefits claim forms.

79. By preparing the VA disability benefits claim forms on behalf of Mr. King, Defendant acted as agent.

80. The King Contract provided that Defendant would charge Mr. King a consulting fee equal to five (5) times the increase in Mr. King's monthly VA disability benefits obtained with Defendant's assistance.

81. Prior to November 1, 2021, Mr. King had a VA disability rating of 30%.

82. With Defendant's assistance, Mr. King's VA disability rating was increased to 70%.

83. As a result of the increase in Mr. King's VA disability rating from 30% to 70%, Defendant estimated that Mr. King's monthly VA disability benefits would increase

by $1,137.26. *See* January 18, 2022 email from M. Johnson to D. King, Invoice Number 21-110134 (the "King Invoice"), attached hereto as **Exhibit K**.

84.     On or about January 18, 2022, Defendant billed Mr. King $8,290.00 to be paid in five (5) monthly payments or a discounted one time payment of $7,461.00, pursuant to the payment plan in the King Contract. *See* **Exhibit K**, King Invoice.

85.     On or about January 25, 2022, Mr. King paid Defendant $7,461.00. *See* King Payment Receipt, attached hereto as **Exhibit L**.

86.     After Mr. King discontinued using Defendant's services, Mr. King, on his own and without any assistance from Defendant, applied for, and obtained, another increase in his VA disability benefits based on Mr. King's health conditions that Defendant failed and refused to include on the VA disability benefits claim forms prepared by Defendant on behalf of Mr. King.

### FACTS REGARDING SPECIFIC PLAINTIFF LARRY POWELL

87.      Plaintiff, Larry Powell, is a veteran of the U.S. Army.

88.     Mr. Powell served in the U.S. Army from May 2006 to February 2012, and was honorably discharged on February 19, 2012.

89.     On or about May 1, 2023, Mr. Powell entered into a contract with Veterans Guardian (the "Powell Contract") to use Veterans Guardian's services in connection with his application for an increase in VA disability benefits. *See* Powell Contract, attached hereto as **Exhibit M**.

90.     Mr. Powell entered into the contract with Veterans Guardian in reliance on Defendant's representations on Defendant's website, vetsguardian.com, that Defendant's "mission [was] to help veterans achieve the ***maximum*** VA rating they have medically

14

earned" and that Defendant would "maximize [Mr. Powell's] VA disability rating earned through [his] honorable service to the nation."  *See* **Exhibit A**, January 4, 2023 printout of vetsguardian.com Landing Page (emphasis added).

91.    Although Veterans Guardian's website states that Veterans Guardian does not assist clients with the presentation and/or prosecution of claims for VA Benefits (*see* **Exhibit B**, Disclaimer), Mr. Powell took no part in completing his VA disability benefits forms.

92.    Defendant prepared Mr. Powell's VA disability benefits claim on behalf of Mr. Powell.  Defendant selected the appropriate forms, selected the information to be included in the forms, and filled out the data for Mr. Powell's specific claim.

93.    Defendant focused exclusively on only some of Mr. Powell's health conditions that qualified Mr. Powell for VA disability benefits.  Defendant failed to include any other conditions on Mr. Powell's VA disability benefits claim forms.

94.    By preparing the VA disability benefits claim forms on behalf of Mr. Powell, Defendant acted as agent.

95.    The Powell Contract provided that Defendant would charge Mr. Powell a consulting fee equal to five (5) times the increase in Mr. Powell's monthly VA disability benefits obtained with Defendant's assistance.

96.    Prior to May 1, 2023, Mr. Powell had a VA disability rating of 70%.

97.    With Defendant's assistance, Mr. Powell's VA disability rating was increased to 80%.

15

98.     As a result of the increase in Mr. Powell's VA disability rating from 70% to 80%, Defendant estimated that Mr. Powell's monthly VA disability benefits would increase by $290.00.

99.     On or about December 23, 2023, Defendant billed Mr. Powell $2,007.00 to be paid in full within seven (7) days.

100.    On or about December 29, 2023, Mr. Powell paid Defendant $2,007.00. *See* Powell Payment Receipt, attached hereto as **Exhibit N**.

101.    After Mr. Powell discontinued using Defendant's services, Mr. Powell, on his own and without any assistance from Defendant, applied for, and obtained, another increase in his VA disability benefits based on Mr. Powell's health conditions that Defendant failed to include on the VA disability benefits claim forms prepared by Defendant on behalf of Mr. Powell.

**FACTS REGARDING SPECIFIC PLAINTIFF CATHERINE PERKINS**

102.     Plaintiff, Catherine Perkins, is a veteran of the United States Navy.

103.    Ms. Perkins served in the United States Navy from August 1, 1988 to July 31, 1992, and was honorably discharged on July 31, 1992.

104.    On or about June 9, 2023, Ms. Perkins entered into a contract with Veterans Guardian (the "Perkins Contract") to use Veterans Guardian's services in connection with her application for an increase in VA disability benefits.   *See* Perkins Contract, attached hereto as **Exhibit O**.

105.    Ms. Perkins entered into the contract with Veterans Guardian in reliance on Defendant's representations on Defendant's website, vetsguardian.com, that Defendant's "mission [was] to help veterans achieve the ***maximum*** VA rating they have medically

16

earned" and that Defendant would "maximize [Mr. King's] VA disability rating earned through [her] honorable service to the nation." *See* **Exhibit A**, January 4, 2023 printout of vetsguardian.com Landing Page (emphasis added).

106. Although Veterans Guardian's website states that Veterans Guardian does not assist clients with the presentation and/or prosecution of claims for VA Benefits (*see* **Exhibit B**, Disclaimer), Ms. Perkins took no part in completing her VA disability benefits forms.

107. Defendant prepared Ms. Perkins' VA disability benefits claim on behalf of Ms. Perkins. Defendant selected the appropriate forms, selected the information to be included in the forms, and filled out the data for Ms. Perkins' specific claim.

108. Defendant focused exclusively on only some of Ms. Perkins' health conditions that qualified Ms. Perkins for VA disability benefits. Defendant failed and refused to include any other conditions on Ms. Perkins' VA disability benefits claim forms.

109. By preparing the VA disability benefits claim forms on behalf of Ms. Perkins, Defendant acted as agent.

110. The Perkins Contract provided that Defendant would charge Ms. Perkins a consulting fee equal to five (5) times the increase in Mr. Perkins' monthly VA disability benefits obtained with Defendant's assistance.

111. Prior to June 9, 2023, Ms. Perkins had a VA disability rating of 40%.

112. With Defendant's assistance, Ms. Perkins' VA disability rating was increased to 90%.

113. As a result of the increase in Ms. Perkins' VA disability rating from 40% to 90%, Defendant estimated that Ms. Perkins' monthly VA disability benefits would increase

17

by $1,440.53.  *See* June 5, 2024 email from R. Locklear to C. Perkins, Invoice Number 23-071441 (the "Perkins Invoice"), attached hereto as **Exhibit P**.

114.    On or about June 5, 2024, Defendant billed Ms. Perkins $7,200 to be paid in five (5) monthly payments or a discounted one time payment of $6,480, pursuant to the payment plan in the Perkins Contract.  *See* **Exhibit P**, Perkins Invoice.

115.    Ms. Perkins has not made any payments to Defendant.

116.    After Ms. Perkins discontinued using Defendant's services, Ms. Perkins, on her own and without any assistance from Defendant, applied for another increase in her VA disability benefits based on Ms. Perkins' health conditions that Defendant failed and refused to include on the VA disability benefits claim forms prepared by Defendant on behalf of Ms. Perkins.

## FACTS APPLICABLE TO ALL COUNTS

### VA Disability Benefits and Applicable Federal Regulations

117.    The VA's disability program provides monthly VA disability compensation payments to veterans who suffered injuries during their military service or secondary to their military service.[1]  In 2022, nearly 3.9 million veterans received monthly disability compensation payments for partial or complete disabilities.[2]

118.    To protect veterans from exploitation by the unlawful business practices, like those of the Defendant, federal laws and regulations were enacted to ensure that "claimants for Department of Veterans Affairs (VA) benefits have responsible, qualified

---

[1]    *See* https://helpdesk.vetsfirst.org/index.php?pg=kb.page&id=1785
[2]    *See* https://www.census.gov/newsroom/press-releases/2021/veterans-report.html

representation in the preparation, presentation, and prosecution of claims for veterans benefits." *See* 38 C.F.R. § 14.626.

119.   The applicable federal regulations—38 U.S.C. § 5901 *et al.* and 38 C.F.R. §§ 14.626 through 14.637—mandate that anyone assisting a veteran in the preparation, presentation, or prosecution of a claim for VA disability benefits: (i) must be accredited by the VA as a service organization representative, an agent, or an attorney; (ii) must be accredited by the VA as an agent or an attorney in order to charge any fees; (iii) cannot charge fees for preparing an initial claim for VA disability benefits; and (iii) can only charge fees that are reasonable.

120.   Specifically, 38 C.F.R. § 14.626 provides that "[t]he purpose of the regulation of representatives, agents, attorneys, and other individuals is to ensure that claimants for Department of Veterans Affairs (VA) benefits have responsible, qualified representation in the preparation, presentation, and prosecution of claims for veterans' benefits."

121.   38 U.S.C. § 5901 provides: "no individual may act as an agent or attorney in the preparation, presentation, or prosecution of any claim under laws administered by the Secretary unless such individual has been recognized for such purposes by the Secretary."

122.   38 U.S.C. § 5902 further provides:

(a)(1) The Secretary may recognize representatives of the American National Red Cross, the American Legion, the Disabled American Veterans, the United Spanish War Veterans, the Veterans of Foreign Wars, and such other organizations as the Secretary may approve, in the preparation, presentation, and prosecution of claims under laws administered by the Secretary.
…
(b)(1) No individual shall be recognized under this section–

19

(A) unless the individual has certified to the Secretary that no fee or compensation of any nature will be charged any individual for services rendered in connection with any claim; and

(B) unless, with respect to each claim, such individual has filed with the Secretary a power of attorney, executed in such manner and form as the Secretary may prescribe.

123.    In order to be recognized and accredited to assist veterans in the preparation,

presentation, and prosecution of claims for VA benefits, an organization must:

(i) Have as a primary purpose serving veterans.  In establishing that it meets this requirement, an organization requesting recognition shall submit a statement establishing the purpose of the organization and that veterans would benefit by recognition of the organization.

(ii) Demonstrate a substantial service commitment to veterans either by showing a sizable organizational membership or by showing performance of veterans' services to a sizable number of veterans.
…
(iii) Commit a significant portion of its assets to veterans' services and have adequate funding to properly perform those services.
…
(iv) Maintain a policy and capability of providing complete claims service to each claimant requesting representation or give written notice of any limitation in its claims service with advice concerning the availability of alternative sources of claims service.  38 C.F.R. § 14.627.

124.    An accredited organization may then recommend certain individual(s) to be

accredited as its representative(s) by certifying that the individual:

(1) Is of good character and reputation and has demonstrated an ability to represent claimants before the VA;
(2) Is either a member in good standing or a paid employee of such organization…; is accredited and functioning as a representative of another recognized organization; … and (3) Is not employed in any civil or military department or agency of the United States.  38 C.F.R. § 14.629(a).

125.    38 C.F.R. §§ 14.629(b)(1) further provides: "No individual may assist

claimants in the preparation, presentation, and prosecution of claims for VA benefits as an

agent or attorney unless he or she has first been accredited by VA for such purpose."

20

126. 38 C.F.R. § 14.636(b) further provides: "Only accredited agents and attorneys may receive fees from claimants or appellants for their services provided in connection with representation. Recognized organizations (including their accredited representatives when acting as such) … are not permitted to receive fees."

127. "Agent" is defined as "a person who has met the standards and qualifications outlined in 14.629(b)." 38 CFR § 14.627.

128. "Attorney" is defined as "a member in good standing of a State bar who has met the standards and qualifications in 14.629(b)." *Id.*

129. 38 C.F.R. § 14.636(c) further prohibits accredited agents and attorneys from charging fees for preparing an initial claim for VA disability benefits; instead, an accredited agent or attorney may charge veterans a fee only after an agency of original jurisdiction (e.g., VA regional office) has issued a decision on a claim, a notice of disagreement has been filed, and the agent or attorney has filed a power of attorney and a fee agreement with the VA.

130. Fees exceeding 33 1/3 percent of past-due VA disability benefits awarded are presumed unreasonable. 38 C.F.R. § 14.636(f).

### Defendant Is Not Accredited by the VA

131. Defendant is not accredited by the VA. *See*, *e.g.*, **Exhibit B**, Disclaimer ("Veterans Guardian is not an accredited agent or entity recognized by the Department of Veterans Affairs and is not affiliated with the Department of Veterans Affairs in any way."); **Exhibit E**, Otters Contract, at ¶ 1(e) ("Veterans Guardian is not a VA accredited agent.")

### Services Provided, and Fees Charged, by Defendant

132. Despite not being accredited by the VA, Defendant offers purportedly "free" "pre-filing and post-filing consulting services" related to veterans' VA disability benefits.

133. The services provided by Defendant include "a medical assessment to identify possible service connected conditions, development of medical evidence, identification of VA benefit claim strategies, [] education and information on how to prepare and submit a claim[,] … review of any decisions made by the VA pursuant to a benefit claim filed by the client, an updated VA benefits assessment and identification of future VA benefit claim strategies." **Exhibit E**, Otters Contract, at ¶ 1(b)-(c).

134. Defendant also prepares and completes all the necessary VA disability benefits claim forms on behalf of veterans.

135. Defendant prepared and completed all the necessary VA disability benefits claim forms on behalf of Ms. Patterson, Mr. Otters, Mr. Iturbe, Mr. King, Mr. Powell and Ms. Perkins.

136. On information and belief, Defendant prepared and completed all the necessary VA disability benefits claim forms on behalf of thousands of other veterans.

137. By preparing and completing all the necessary VA disability benefits claim forms on behalf of veterans, Defendant acts as "agent" of the veterans in that Defendant acts as "[s]omeone who is authorized to act for or in place of another."

138. According to the Veterans Guardian's website, vetsguardian.com, "[Defendant] offer[s] a free consultation to discuss our services and the ways we can help you.  Should you choose to move forward with us, our consulting fee only applies if and when you receive a rating increase.  We take no money up front and if you don't get an

22

increase, you owe us nothing." *See* August 21, 2023 printout of FAQs from vetsguardian.com (the "FAQs"), attached hereto as **Exhibit Q**.

139. If a veteran receives an increase in his/her VA rating and an increase in the amount of his/her monthly VA disability benefits, Defendant charges the veteran "5 months of the increase." *See* Veterans Guardian Fee Structure, attached hereto as **Exhibit R**; **Exhibit E**, Otters Contract, at ¶ 3(b).

140. According to Defendant, "with a contingent fee-based model, we're incentivized to provide the best experience and achieve the best result for each veteran client." *See* Veterans Guardian Myth/Fact Sheet ("Myth/Fact Sheet"), attached hereto as **Exhibit S**.

141. As of April 2022, Defendant had assisted veterans with at least 29,000 disability claims, had at least 4,600 monthly appointments with potential veteran clients, and prepared at least 1,600 fully developed claim packets per month. *See* Veterans Guardian Brochure, attached hereto as **Exhibit T**.

142. As of April 2022, Defendant had assisted at least 5,636 veterans in Texas with obtaining $36 million in benefits per year. *Id.*

143. As of April 2022, Defendant had assisted at least 4,776 veterans in North Carolina with obtaining $47 million in benefits per year. *Id.*

144. As of April 2022, Defendant had assisted at least 2,956 veterans in Florida with obtaining $17 million in benefits per year. *Id.*

145. As of April 2022, Defendant had assisted at least 1,844 veterans in California with obtaining $13 million in benefits per year. *Id.*

23

146.    As of April 2022, Defendant had assisted at least 1,765 veterans in Georgia with obtaining $11 million in benefits per year.  *Id.*

147.    Texas, North Carolina, Florida, California and Georgia were Defendant's "top 5 states by number of clients."  *Id.*

148.    Defendant's services were not, and are not, limited to the states of Texas, North Carolina, Florida, California and Georgia.

149.    Defendant provides services worldwide.

**Deceptive, Misleading, and/or False Statements on Defendant's Website**

150.    Defendant's website, vetsguardian.com, entices veterans to use Defendant's services with deceptive, misleading, and/or false statements.

151.    Defendant is aware that charging veterans fees for the preparation, presentation, and prosecution of claims for VA disability benefits by unaccredited organizations and/or unaccredited individuals is illegal, and Defendant contorts the language on its website to make it seem that Defendant is not assisting veterans in the preparation, presentation, and prosecution of claims and charging illegal fees.

152.    Defendant's website, vetsguardian.com, states: "Veterans Guardian is a consulting service providing pre-filing and post-filing consulting services to Veterans submitting claims for VA Benefits. Veterans Guardian ***does not assist clients with the presentation and/or prosecution of claims for VA Benefits***."  *See* **Exhibit B**, Disclaimer (emphasis added).

153.    Defendant's statement that Veterans Guardian "does not assist clients with the presentation and/or prosecution of claims for VA Benefits" is deceptive, misleading and/or false.

24

154.     According to vetsguardian.com, Defendant assists veterans as follows: (i) "make recommendations based on your specific medical history," (ii) "validate" and/or "support your claim," (iii) "identify a list of potential conditions you may not have known about or have been underrated for," (iv) "develop and assemble all the evidence to support your claim," including "developing the right medical evidence to support your disability benefits," (v) "help with documentation," and (vi) "strengthen your claim" by "gather[ing] and present[ing] the information and evidence needed for the VA to make a favorable claim decision." *See* August 21, 2023 printout of Services from vetsguardian.com (the "Services"), attached hereto as **Exhibit U**.

155.     Defendant also assists veterans by completing claim forms for VA disability benefits on behalf of veterans.

156.     In its cease and desist letters to "claim sharks," like Defendant, the VA recently stated:

> [I]t appears that you may be attempting to draw a legal distinction between providing advice to veterans about the information needed to substantiate their claims and filing the claim under your own name.  However, this is a distinction without a difference as both types of work are considered to be in furtherance of the preparation and presentation of VA benefits claims, and thus, prohibited without first achieving VA accreditation....  [T]he materials on [] website reflect services that clearly constitute assistance in the preparation, presentation, and prosecution of claims, which cannot be performed without VA accreditation.  38 C.F.R. § 14.629(b)....

*See* Cease and Desist Letters, attached hereto as **Exhibit V**.

157.     Defendant does not tell veterans that the VA has stated that "providing advice to veterans about the information needed to substantiate their claims and filing the claim under your own name ... is a distinction without a difference as both types of work

25

are considered to be in furtherance of the preparation and presentation of VA benefits claims, and thus, prohibited without first achieving VA accreditation."

158. Defendant does not tell veterans that Defendant has received a cease and desist letter from the VA telling Defendant to stop its business practices.

159. Defendant also deceives and misleads veterans into believing that enforcement of the existing federal laws and regulations protecting veterans from predatory practices is nothing more than an attempt by "self-serving entities" to "propagat[e] misinformation and perpetuat[e] falsehoods regarding VA disability benefit consultants." *See* January 4, 2024 printout of Advocacy from vetsguardian.com (the "Advocacy"), attached hereto as **Exhibit W**. A link directly below takes veterans to a page "debunk[ing] these myths." *Id.*

160. Among the "myths" "debunked" are:

(i) "Myth # 1 'The VA is easy to navigate,'" debunked with: "Anyone who has filed a disability claim with the VA knows that the system is extremely onerous and time-consuming. Look no further than the VA disability claims backlog: There are over 243,000 pending claims that are backlogged, or older than 125 days since the submission. That's over one-third of active claims."

(ii) "Myth # 2 'The VA is efficient,'" debunked with: "The VA requires that claimants provide proof of their disability, proof of eligibility for VA disability benefits, proof that their disability is related to military service, and medical evidence of all the above. Many disabled veterans need assistance collecting, vetting, packaging, and providing these materials, ranging from general guidance to medical evaluations, to hands-on preparation of their claims. To argue that the VA is an ally in this process is akin to arguing that the IRS is helpful in tax preparation."

(iii) "Myth # 3 'VSOs are fast and accessible,'" debunked with: "While well-intentioned, VSO groups can be understaffed and under-resourced in many areas of the country. This leads to bureaucratic slowdown and limited offerings for veterans. Local representatives and members of VSOs don't solely focus on just disability claims and simply don't have the time or expertise to focus on individual disability claims." *See* **Exhibit W**, Advocacy.

161. An invitation to "read the rest" then leads veterans to a VA Disability Claims Assistance Separating Fact from Fiction "Fact Sheet," which further assures the veterans that:

(i) "Veterans Guardian has a success rate of over 90%. Our experience is one of the keys to our success. Many of our staff have personally gone through the disability claims process, and we've successfully processed over 25,000 disability claims in the last two years."

(ii) "At Veterans Guardian, we're veteran-owned and operated, and our staff is 75% of veterans, spouses of veterans, or spouses of active duty service members."

(iii) Veterans Guardian is not "operating totally unchecked," but is, in fact, "subject to the Federal Trade Commission, Department of Justice, and state Inspector General oversight[, which] … can bring civil and criminal penalties for private companies that break the law."

(iv) Veterans Guardian, and other claim sharks, did not "[take] advantage of veterans during the COVID-19 pandemic; instead "VSOs made a conscious decision to shut down during the pandemic" and "[p]rivate businesses did not have that luxury." *See* **Exhibit S**, Myth/Fact Sheet.

162. If veterans still have any doubts about Veterans Guardian after reading the statements in the preceding paragraphs, Defendant assures them that Defendant is not "acting illegally" because "[f]ederal and state laws DO NOT prohibit private claims consultants from assisting veterans with their disability claims." *Id.* (emphasis in original).

**Deceptive, Misleading, and/or False Statements in Defendant's Contracts**

163. The standard form Veterans Guardian Consulting Service Agreements (the "Contracts") entice veterans to use Veterans Guardian's services with deceptive, misleading, and/or false statements.

164. Defendant, with its superior knowledge of the VA regulations, takes advantage of its veteran clients by intentionally mischaracterizing its services and telling veterans that its services comply with federal law and regulations, as follows:

27

(i)     The very first line of the Veterans Guardian's Contracts states that the Contracts are "in accordance with Chapter 59, Title 38, United States Code and Title 38, Code of Federal Regulations § 14" because Veterans Guardian provides "VA benefit pre-filing and post-filing consulting services only." *See*, *e.g.*, **Exhibit E**, Otters Contract, ¶ 1(a).

(ii)    Veterans Guardian's Contracts state that "[f]ederal code and VA regulations prohibit anyone from charging a fee for the preparation, presentation, and prosecution of a new claim for veterans' benefits" and that "[f]ederal [c]ode and VA regulations only allows VA accredited agents to assist claimants in the preparation, presentation and prosecution of claims for VA benefits. However, *[f]ederal code and VA regulations do allow an entity to provide pre-filing and post-filing consulting services as these services occur outside a proceeding before the Department of Veterans' Affairs on a claim for benefits*." *Id.* at ¶ 1(f) (emphasis added).

(iii)   Veterans Guardian's Contracts also state: "*Veterans Guardian does not assist a client in preparation, presentation and prosecution of claims for VA benefits or charge any fee for the same.*" *Id.* ¶ 2(a)(4) (emphasis added).

(iv)    All pre-filing services provided are IAW [in accordance with] regulations and limitations identified in Chapter 59, Title 38, United States Code and Title 38, Code of Federal Regulations, section 14.  *Id.* at ¶ 2(a)(2)(a).

(v)     All post-filing services provided are IAW [in accordance with] regulations and limitations identified in Chapter 59, Title 38, United States Code and Title 38, Code of Federal Regulations, section 14.

165.    The statements in the preceding paragraphs are deceptive, misleading, and/or false.

166.    There is no provision in 38 U.S.C. § 5901 *et al.* and 38 C.F.R. §§ 14.626 through 14.637 that allows Veterans Guardian, an unaccredited entity, to provide "pre-filing" or "post-filing" services or to otherwise assist veterans in the preparation, presentation, or prosecution of a VA benefit claim and to be compensated for doing so.

167.    There is no provision anywhere else in federal laws or regulations that allows Veterans Guardian, an unaccredited entity, to provide "pre-filing" or "post-filing"

services or to assist veterans in the preparation, presentation, or prosecution of a VA benefit claim and to be compensated for doing so.

168.    Defendant's so-called "pre-filing" and "post-filing" "consulting" services are precisely the kind of services included within the definition of preparation, presentation, and prosecution of claims for VA benefits subject to the VA regulations mandating accreditation and restricting the fees that can be charged by accredited agents and/or attorneys.

169.    Specifically, the VA Office of General Counsel has issued the following guidance:

> Preparing a benefits claim generally includes, but is not limited to, ***consulting with*** or ***giving advice*** to a claimant or ***potential claimant in contemplation of filing a benefits claim***, ***gathering evidence in support of a benefits claim on behalf of a claimant or potential claimant***, or filling out VA forms for their submission to VA. Likewise, presenting and prosecuting a benefits claim generally includes, but is not limited to, filing, or ***pursuing in any way***, an initial claim for VA benefits, a request for further review of a decision by the agency of original jurisdiction, or an appeal to the Board of Veterans' Appeals. Services that strongly suggest the "practice before VA" are those that would have no value or purpose, or very little value or purpose, outside of VA's adjudication process for benefits claims.

*See* VA Office of General Counsel Accreditation Frequently Asked Questions, attached hereto as **<u>Exhibit X</u>** (emphasis added).

170.    Defendant does not tell veterans that the VA Office of General Counsel has issued the above guidance or that the VA Office of General Counsel has stated that "presenting and prosecuting a benefits claim … includes … pursuing in any way, an initial claim for VA benefits, a request for further review of a decision by the agency of original jurisdiction, or an appeal to the Board of Veterans' Appeals."

171. The VA Office of General Counsel has also clarified that "acts in making the claim ready for filing, but not the actual filing of the claim … constitutes preparation of a claim and therefore requires accreditation. This is because the advice is given in regards to a specific application for benefits rather than general advice not related to a specific claim. The difference is significant in that the purpose of VA's accreditation program is to ensure that claimants for VA benefits receive qualified assistance in preparing and presenting their claims." *See* **Exhibit X**, VA Office of General Counsel Accreditation Frequently Asked Questions.

172. Defendant does not tell veterans that the VA Office of General Counsel has issued the above guidance.

173. Veterans Guardian's own Contracts admit that Defendant is "consulting with or giving advice to a claimant or potential claimant in contemplation of filing a benefits claim, gathering evidence in support of a benefits claim on behalf of a claimant or potential claimant" and otherwise taking "acts in making the claim ready for filing" or giving advice "in regards to a specific application for benefits." *Id.*

174. Specifically, Veterans Guardian's Contracts provide: "Pre-filing consulting services include a VA benefits assessment, a medical assessment to identify possible service connected conditions, development of medical evidence, identification of VA benefit claim strategies, and education and information on how to prepare and submit a claim. … Post-filing consulting services include a review of any decisions made by the VA pursuant to a benefit claim filed by the client, an updated VA benefits assessment and identification of future VA benefit claim strategies." *See*, *e.g.*, **Exhibit E**, Otters Contract, ¶ 1(b)-(c).

175. Veterans Guardian's contracts further provide that "[p]re-filing consulting services are provided to the client prior to any decision on the part of the client to initiate a claim for VA benefits and an individual becoming a 'claimant' under the definition as found in 38 CFR § 14.627(h) and 38 CFR § 14.627(i)." *Id.*

176. The statement that Defendant is not subject to federal regulations because "[p]re-filing consulting services are provided to the client prior to any decision on the part of the client to initiate a claim for VA benefits and an individual becoming a 'claimant' under the definition as found in 38 CFR § 14.627(h) and 38 CFR § 14.627(i)" is deceptive, misleading and/or false.

177. As stated in the VA Office of General Counsel guidelines, "[p]reparing a benefits claim generally includes, but is not limited to, *consulting with* or *giving advice* to a … *potential claimant in contemplation of filing a benefits claim*, [or] *gathering evidence in support of a benefits claim on behalf of a … potential claimant*…. Likewise, presenting and prosecuting a benefits claim generally includes, but is not limited to … *pursuing in any way*, an initial claim for VA benefits." **Exhibit X,** VA Office of General Counsel Accreditation Frequently Asked Questions (emphasis added).

178. The VA also specifically provides that "[a]dvising a claimant on a specific benefit claim or directing the claimant on how to fill out the application, even if you never put pen to paper, is considered claims preparation." *See* VA Accreditation Program, attached hereto as **Exhibit Y**.

179. Veterans Guardian's Contracts also state: "Federal code and VA regulations limit Veterans Guardian to work only with clients that do not have an active claim with VA and [are] not a 'claimant' as defined in 38 CFR § 14.627(h) and 38 CFR § 14.627(i).

Veterans Guardian may only work with the veteran once the VA has made a final decision on the claim or appeal. However, Veterans Guardian may assist clients with the development of new claims not related to pending claims." *Id.* at 1(g).

180. The same Contracts also state, however: "***Veterans Guardian's preference is to allow [pending] claims to be adjudicated first and then establish the consulting relationship and move forward. However, Veterans Guardian will move forward with providing pre-filing consulting services for claims if the client desires***." *Id.* at 2(c)(4). Therefore, the statement that Veterans Guardian does not work with veterans on any pending claims is deceptive, misleading, and/or false.

181. Veterans Guardian's Contracts also provide:

(i) "After the client has received a service connected disability rating from the VA (based on Veterans Guardian assistance), Veterans Guardian will continue to provide advice and assessments of any action from the VA to help protect your rating from being incorrectly lowered for the lifetime of the client at NO ADDITIONAL CHARGE." *See*, *e.g.*, **Exhibit E**, Otters Contract, ¶ 2(a)(3)(e) (emphasis in original).

(ii) Subsequent Consulting Services with Veterans Guardian. As with the initial claim, the increase in the clients monthly benefit award is determined by subtracting the client's monthly benefit award after the previous submission based on Veterans Guardian Pre-filing consulting services and the clients monthly benefit award after submission of their subsequent submission based on Veterans Guardian Pre-filing consulting services. Bottom line – we base determination of subsequent consulting fees only on any increase we help you achieve.Subsequent Consulting Services with Veterans Guardian. As with the initial claim, the increase in the clients monthly benefit award is determined by subtracting the client's monthly benefit award after the previous submission based on Veterans Guardian Pre-filing consulting services and the clients monthly benefit award after submission of their subsequent submission based on Veterans Guardian Pre-filing consulting services. Bottom line – we base determination of subsequent consulting fees only on any increase we help you achieve. *See*, *e.g.*, **Exhibit E**, Otters Contract, ¶ 3(d).

182. The statements in the preceding paragraph are deceptive, misleading, and/or false.

183.    After Ms. Patterson discontinued using Defendant's services, applied for an additional increase in the VA disability benefits entirely on her own, and achieved an additional increase in the VA disability benefits entirely on her own, Defendant sent Ms. Patterson an invoice attempting to collect five times the increase in the monthly payment amount that Ms. Patterson had obtained entirely on her own and without using Defendant's services.

**Additional Deceptive, Misleading, and/or False Statements by Defendant**

184.    Although Veterans Guardian's Contracts advise veterans that "there are completely free services available to veterans to support the filing of claims for VA benefits and … [the veterans] always ha[ve] the option to utilize the free services" (*see*, *e.g.*, **Exhibit E**, Otters Contract, ¶ 1(d)), Defendant also tells veterans that the VA "system is extremely onerous and time-consuming" and VSO groups "can be understaffed and under-resourced … lead[ing] to bureaucratic slowdown and limited offerings for veterans" and "simply don't have the time or expertise to focus on individual disability claims."  *See* **Exhibit W**, Advocacy.

185.    Although Veterans Guardian's Contracts state that "Veterans Guardian consulting services are not required to submit a claim for VA benefits and the client can achieve a positive VA benefit claim outcome with [VSO groups and] other organizations," nowhere in the Contracts, on its website, or elsewhere does Defendant tell veterans that veterans can achieve as favorable, or a more favorable, outcome by utilizing free and/or accredited resources, or by simply submitting the applications on their own.

186.    In fact, Defendant's website states that Defendant will "maximize your VA disability rating earned through your honorable service to the nation" and that Defendant's

"mission is to help veterans achieve the ***maximum*** VA rating they have medically earned."
*See* **Exhibit A**, Landing Page, (emphasis added).

187.    Defendant thereby misleads veterans into concluding that, unless the veterans choose to utilize Defendant's services, the veterans will have "limited offerings" on their "individual disability claims" and will not achieve a "maximize[d]" or "maximum VA rating."

188.    In practice, Defendant often fails and refuses to include all qualifying medical conditions on veterans' disability claims prepared by Veterans Guardian, focusing instead on one or two conditions of Defendant's choosing, thereby limiting the amount of benefits that will be received by the veterans.

189.    Defendant fails and refuses to include qualifying medical conditions on veterans' disability claims prepared by Veterans Guardian, even when specifically asked to do so by the veterans.

190.    Defendant also relies on the veteran status of its founders, William Cooper Taylor, Jr. ("Taylor") and Scott Chaim Greenblatt ("Greenblatt"), to gain venetrans' trust and to entice veterans to enter into contracts with Defendant.

191.    Greenblatt advertises on vetguardians.com that he "founded Veterans Guardian VA Claim Consulting" after serving 25 years on active duty with the United States Army.  *See* August 21, 2023 printout of Meet Our Leaders from vetsguardian.com (the "Leaders"), attached hereto as **Exhibit Z**.

192.    Taylor advertises on vetguardians.com that "[p]rior to joining Veterans Guardian in 2017, [he] served as a commissioned officer in the Army, spending 23 years

34

on active duty … includ[ing] six operational deployments and a wide range of command staff positions." *See* **Exhibit Z**, Leaders.

193. On April 27, 2022, the House Committee on Veterans' Affairs Subcommittees on Disability Assistance and Memorial Affairs and Oversight and Investigations conducted an open session and joint oversight hearing entitled "At What Cost? – Ensuring Quality Representation in the Veteran Benefit Claims Process" (the "Hearing").

194. Taylor was one of the witnesses who testified at the Hearing.

195. When questioned during the Hearing, Taylor falsely testified under oath that "Veterans Guardian has not received a cease-and-desist letter from the VA."

196. On June 9, 2022, Hearing Committee staff met with Taylor, Greenblatt and other representatives of Veterans Guardian to discuss the inaccurate statement regarding the cease-and-desist letter. During this meeting, Veterans Guardian officials stated that they did not recall receiving a cease-and-desist letter from the VA.

197. Following Veterans Guardian's deceptive, misleading and/or false statements and/or omissions, the Hearing Committee staff explicitly referenced a letter addressed to Greenblatt. At that time, Veterans Guardian finally admitted that it had received the letter, but did not believe that the letter constituted a cease-and-desist letter.

## CLASS ACTION ALLEGATIONS

198. Each putative member of the class herein was charged a fee by Defendant for assistance in preparing an initial VA claim and/or obtaining an increase in his/her VA disability rating and benefits in violation of 38 U.S.C. § 5901 *et al.* and 38 C.F.R. §§ 14.626 through 14.637.

199.    Each putative member of the class herein was charged a fee in the amount of five times the monthly increase in his/her VA benefits in violation of 38 U.S.C. § 5901 *et al.* and 38 C.F.R. §§ 14.626 through 14.637.

200.    Plaintiffs bring this action on behalf of themselves and on behalf of a class of similarly situated persons (the "Class") pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The proposed Class is defined as follows:

> All veterans who have been charged a fee by Veterans Guardian VA Claim Consulting, LLC in connection with the veterans' U.S. Department of Veterans Affairs disability claims at any time within four (4) years prior to August 22, 2023.

201.    Excluded from the Class are the following: (i) Defendant; (ii) any person, firm trust, corporation or other entity affiliated with Defendant; (iii) any person who previously signed a document that operates to release Defendant from any and all liability for damages stemming from services provided by Defendant; and (iv) Class members who timely opt-out of any stipulation.

202.    Members of the Class number in the thousands.

203.    Members of the Class are so numerous that joinder of them is impracticable. The sheer volume of Veterans Guardian's worldwide business, which has assisted with at least 29,000 disability claims, had at least 4,600 monthly appointments with potential veteran clients, and prepared at least 1,600 fully developed claim packets per month, supports a finding of numerosity.  *See* **Exhibit T**, Veterans Guardian Brochure.

204.    There are numerous questions of law and fact common to the Class.  Such common questions include, but are not limited to:

> (i) Whether Defendant is subject to the limitations of 38 U.S.C. § 5901 *et al.* and 38 C.F.R. §§ 14.626 through 14.637;

36

(ii) Whether Defendant's business practices violate 38 U.S.C. § 5901 *et al.* and 38 C.F.R. §§ 14.626 through 14.637;

(iii) Whether Defendant's business practices constitute unfair and/or deceptive practices and otherwise violate N.C. Gen. Stat. § 75-1.1;

(iv) Whether Defendant's business practices violate the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50, *et seq.*;

(v) Whether Defendant should be enjoined from continuing to intentionally violate federal and/or state law; and

(vi) Whether Defendant should be ordered to refund the fees paid by the Class members.

205.    The named Plaintiffs herein are members of the Class, and their claims are typical of other Class members' claims in that, like all Class members, Plaintiffs were induced to enter into contracts with Veterans Guardian and were charged a fee by Defendant in connection with their VA disability claims.

206.    Plaintiffs are adequate representatives of the Class' interests in that they have and will vigorously pursue this action on behalf of the entire Class, have no conflicts with the Class, have interests completely coincident with the Class' interests, have personal interests of law and fact common with the Class, and have retained experienced Class counsel to represent the Class.

207.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy: the Class is definable, and the number plaintiffs can be easily identified by examination of Defendant's records; prosecution of this case as a class action will eliminate the possibility of repetitious litigation and will provide redress for claims which otherwise may be too small to support the expense of individual complex litigation against Defendant; and there are no problems that would make this case difficult to manage as a class action.

208.    Moreover, Veterans Guardian has acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief and corresponding final injunctive relief under Rule 23(b)(2) appropriate with respect to the Class as a whole. Veterans Guardian should be enjoined from preparing, presenting, and/or prosecuting VA disability claims, and a declaration should be issued that Defendant disgorge its ill-gotten gains and void the invoices with any outstanding debt.

**COUNT I**
**VIOLATION OF NORTH CAROLINA UNFAIR TRADE PRACTICES ACT, N.C.
Gen Stat § 75-1.1, *et seq*.**

209.    Plaintiffs repeat and reallege the foregoing Paragraphs of this Second Amended Complaint as though fully set forth herein.

210.    N.C. Gen Stat § 75-1.1, *et seq*. ("UDTPA") prohibits businesses from engaging in unfair and deceptive acts or practices and states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen Stat § 75-1.1.

211.    Courts have used many standards to determine whether an act or practice is "unfair," including if the act: (i) violates industry standards; (ii) violates public policy; (iii) is immoral, unethical, or unscrupulous; (iv) substantially injures consumers; (v) is an inequitable assertion of the party's power or position; and/or (vi) has the tendency to deceive.

212.    "Commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession. N.C. Gen Stat § 75-1.1(b).

38

213. Defendant's business activities, at all times relevant to this Second Amended Complaint, are considered "commerce" as defined in N.C. Gen Stat § 75-1.1(b).

214. Defendant's business activities are unfair, deceptive, unscrupulous, rude, and otherwise violate N.C. Gen. St. § 75-1.1.

215. Defendant's unfair and deceptive trade practices include but are not limited to:

(i) Enticing veterans to enter into contracts with Veterans Guardian through making deceptive, misleading, and/or false statements on Veterans Guardian's website and in Veterans Guardian's Contracts, as described herein;

(ii) Enticing veterans to enter into contracts with Veterans Guardian by promising veterans that Veterans Guardian will maximize VA disability benefits obtained by veterans, then failing and refusing to include all qualifying medical conditions on veterans' VA disability benefits applications, thereby limiting the benefits obtained by veterans;

(iii) Assisting veterans in the preparation, presentation, and prosecution of claims for VA disability benefits without being accredited to do so by the VA;

(iv) Charging fees for assisting veterans in the preparation, presentation, and prosecution of claims for VA disability benefits without being accredited to do so by the VA;

(v) Charging fees for initial VA claims in violation of the VA's rules and regulations;

(vi) Charging fees in excess of any reasonable fee consistent with the work performed;

(vii) Charging fees in excess of those allowed by the VA's rules and regulations;

(viii) Ironically trying to avoid rules applicable to VA claims by not complying with the regulatory processes for either; and

(ix) Entering into illegal contracts with individuals who have served our nation and been discharged honorably.

216. Defendant's actions as set forth above violate UDTPA because they violated public policy, were unethical and unscrupulous, and substantially injured veterans.

39

217. Defendant's actions as set forth above have the capacity to deceive and in fact did deceive thousands of veterans, affecting the marketplace.

218. North Carolina courts have held that a violation of a regulatory statute that is designed to prevent unfair or deceptive conduct can constitute a per se violation of the UDTPA.

219. Defendant's violation of 38 U.S.C. §59, *et seq*. and/or 38 C.F.R. § 14, *et seq*., constitutes a violation of regulations designed to prevent unfair and or deceptive conduct and therefore can act as a per se violation of N.C. Gen. Stat. 75-1.1.

220. Moreover, North Carolina appellate courts have held that violations of regulatory statutes that are designed to protect consumers are per se violations of N.C.G.S. 75-1.1.

221. Federal law established under 38 U.S.C. Chapter 59, *et seq*. and/or 38 C.F.R. § 14, *et seq*., are regulations governing who can prepare and present claims for disability benefits to the VA, who can charge for assisting the veterans, and how much can be charged to the veterans in connection with such services.

222. Since the federal regulations were designed to protect veterans, Defendant's business practice of routinely violating these regulations constitutes a per se violation of N.C.G.S. 75-1.1.

223. North Carolina Courts have also held that "systematically overcharging a customer … is an unfair trade practice squarely within the purview of N.C. Gen. Stat. § 75–1.1." *Noble v. Hooters of Greenville (NC), LLC*, 199 N.C. App. 163, 171, 681 S.E.2d 448, 455 (2009).

40

224. The VA only permits accredited agents or attorneys to charge for assistance with VA disability claims (38 C.F.R. § 14.636(b)), and the accredited agents or attorneys may only charge a maximum of 33 1/3 percent of any back pay award pursuant to 38 C.F.R. § 14.636(f).

225. By charging veterans for its services without being accredited by the VA, and by charging veterans significantly more than the 33 1/3 percent of any back pay award pursuant to 38 C.F.R. § 14.636(f), Defendant "systematically overcharged" veterans, and, as such, engaged in "an unfair trade practice squarely within the purview of N.C. Gen. Stat. § 75–1.1." *Noble*, 199 N.C. App. at 171, 681 S.E.2d at 455.

226. Federal law established under 38 U.S.C. Chapter 59, *et seq*. and/or 38 C.F.R. § 14, *et seq*., also provides that all agreements for the payment of any fees for services rendered in connection with veterans benefits must be in writing and signed by both the claimant or appellant and the accredited agent or attorney. To be valid and lawful, a fee agreement must: (1) name the veteran; (2) name the claimant or appellant if other than a veteran; (3) name any disinterested third-party payer and the relationship between the third-party payer and the veteran, claimant, or appellant; (4) set forth the applicable VA file number; and (5) contain the specific terms under which the amount to be paid for the services of the attorney or agent will be determined. 38 C.F.R. § 14.636(g)(1)(i-v).

227. Within thirty (30) days of the execution of a fee agreement between a veteran and representative, the representative must send a copy of the fee agreement to either the VA or Office of General Counsel ("OGC"). 38 C.F.R. 14.636(g)(3).

41

228.     Because these regulations were designed to protect veterans, Defendant's business practice of routinely violating these regulations constitutes a violation of N.C.G.S. 75-1.1.

229.     Defendant's actions have actually, proximately, and foreseeably damaged Plaintiffs and Class members in an amount in excess of $75,000.

230.     Defendant should not be permitted to keep any portion of its fees because Defendant failed to submit its fee agreements in accordance with 38 C.F.R. § 14.636(f).

231.     Defendant should not be permitted to keep any portion of its fees because Defendant is not accredited and the collection of a fee by an unaccredited claims representative violates 38 C.F.R. § 14.636(b).

232.     Additionally, this Court should award attorney's fees under N.C. Gen. Stat. § 75-16.1 for an unwarranted refusal to settle.

233.     Moreover, this Court must award treble damages pursuant to N.C. Gen. Stat. § 75-16.

## COUNT II

### VIOLATIONS OF THE NORTH CAROLINA DEBT COLLECTION ACT N.C. Gen. Stat. § 75-50, *et seq.*

234.     Plaintiffs repeat and reallege the foregoing Paragraphs of this Second Amended Complaint as though fully set forth herein.

235.     The North Carolina Debt Collection Act ("NCDCA") and the UDTPA are interrelated, and the NCDCA is essentially an extension of the UDTPA to debt collection practices. *See Batten v. Panatte, LLC* (*In re Batten*), No. 18-00256-5-DMW (Bankr. E.D.N.C. Feb. 22, 2019).

236. Defendant is a debt collector as defined by the NCDCA, N.C. Gen. Stat. § 75.50(3).

237. NCDCA applies to any person engaged in debt collection from a consumer, which includes a creditor collecting its own accounts. N.C. Gen. Stat. § 75-50(3).

238. Plaintiffs and the Class are consumers as defined by the NCDCA, N.C. Gen. Stat. § 75-50(1).

239. Defendant attempted to collect a debt from Plaintiffs when Defendant emailed them invoices seeking payment for an alleged debt.

240. On information and belief, Defendant emailed other similarly situated veterans nearly identical invoices attempting to collect substantially similar debts arising from unlawful and prohibited practices.

241. As such, Defendant sought to collect a "debt" within the meaning of N.C. Gen. Stat. § 75-50(2).

242. "The collection letters need not have caused each class member a personal, factual injury based on his or her subjective reaction to it, but only an informational injury based on alleged misrepresentations and misleading information contained in the letters, in violation of the statute." *McMillan v. Blue Ridge Companies, Inc*., 866 S.E.2d 700, 707, 379 N.C. 488, 497, 2021 -NCSC- 160, ¶ 21 (N.C. 2021).

243. "[W]hen a statute creates a cause of action independent from a personal, factual, injury, 'the relevant questions are only whether the plaintiff has shown a relevant statute confers a cause of action and whether the plaintiff satisfies the requirements to bring a claim under the statute.' The NCDCA is one such statute." *McMillan*, 866 S.E.2d at 709, 379 N.C. at 500 (internal citations omitted).

244. The NCDCA prohibits any person collecting a debt from making deceptive or false representations about the debt being collected as follows:

> N.C. Gen. Stat. § 75-54. Deceptive representation. No debt collector shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation. Such representations include, but are not limited to, the following: … (4) Falsely representing the character, extent, or amount of a debt against a consumer… (7) Falsely representing the status or true nature of the services rendered by the debt collector or his business.

245. Defendant admits that it is not accredited. *See*, *e.g.*, **Exhibit E**, Otters Contract.

246. The VA only permits accredited agents or attorneys to charge for assistance with VA disability claims. 38 C.F.R. § 14.636(b).

247. Defendant knew that only accredited agents or attorneys may charge a fee to veterans for such services as provided in 38 C.F.R. § 14.636(b), and that even accredited agents or attorneys may only charge a maximum of 33 1/3 percent of any back pay award pursuant to 38 C.F.R. § 14.636(f).

248. By sending invoices seeking payment for claim services that are prohibited by 38 C.F.R. § 14.636(b) and by charging amounts that exceed what can be charged by accredited agents or attorneys under 38 C.F.R. § 14.636(f), Defendant falsely represented the legal status, character or "true nature" of the debt. In truth, the debt is completely prohibited by Chapter 38.

249. Any debts that Defendant collected should be disgorged, and any outstanding debts should be void.

250. Defendant had actual knowledge that its fees are not authorized by federal law or North Carolina law, and therefore in charging the illegal fees Defendant knowingly

44

violated N.C. Gen. Stat. § 75-55 by claiming and attempting to enforce a debt which was not legitimate and not lawfully due and owing.

251.    As a direct and proximate result of Defendant's violations of the NCDCA, Plaintiffs and the Class have been harmed in the amount of fees collected and are entitled to actual damages, statutory damages of not less than $500 but no more than $4,000 for each violation, declaratory and injunctive relief, and attorney's fees and costs pursuant to N.C. Gen. Stat. § 75-56(a)-(d).

<u>**COUNT III**</u>
**DECLARATORY JUDGMENT**

252.    Plaintiffs repeat and reallege the foregoing Paragraphs of this Second Amended Complaint as though fully set forth herein.

253.    Plaintiffs seek a declaration pursuant to N.C. Gen. Stat. § 1-253 *et. seq.* that any contract between Plaintiffs/Class members and Defendant is void or voided and/or rescinded.

254.    The purported contracts are void or voidable because they are unconscionable in violation of VA rules (as set forth above), and are unfair and deceptive.

255.    N.C. Gen. Stat. § 1-254 specifically allows this Court to make declarations regarding the rights and obligations under contracts.

256.    Per N.C. Gen. Stat. § 1-259, Plaintiffs ask for all available relief pursuant to the declarations, including disgorgement of all amounts received by Defendant under the purported contracts, interest, attorney's fees, a constructive trust on all such amounts including profits and interest, equitable tracing and an equitable lien on any funds received by Defendant and disbursed to any insiders, and any other remedy applicable.

257.    Plaintiffs also ask for equitable relief preventing any further solicitation or contracts between Defendant and others who are or could be in the Class.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs and Class members pray for the following relief:

A.      Certification of the Class under Rule 23 of the Federal Rules of Civil Procedure;

B.      An order that Defendant have illegally charged the Class members fees related to the Class members' VA disability benefits;

C.      Disgorgement of all sums received from Plaintiffs and the Class members by Defendant;

D.      Imposition of a constructive trust on Defendant's net assets and revenues;

E.      An order enjoining Defendant from continuing their practices;

F.      An award of treble damages per N.C. Gen. Stat. § 75-16;

G.      An award of attorney's fees per N.C. Gen. Stat. § 75-16.1 and/or N.C. Gen. Stat. § 75-56(a)-(d).

H.      Declarations consistent with the above requests including, but not limited to, a declaration that any contracts entered into by Defendant with Plaintiffs and Class members are void/rescinded and that all amounts received by Defendant, plus interest and investment returns, be returned to Plaintiffs and Class members;

I.      Eventual appointment of Fitzgerald, Hanna and Sullivan, PLLC and The Pels Law Firm (after pro hac is granted) as class counsel;

J.      Award of damages in an amount in excess of $75,000;

K.      An award to Plaintiffs and the Class members for attorney's fees, treble damages, punitive damages, costs, disbursements and pre and post judgment interest;

46

L.      Other equitable relief to which Plaintiffs and the Class members may be shown to

be entitled; and

M.      Any such other relief as the Court deems just, equitable and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**FITZGERALD HANNA & SULLIVAN**

Dated:  September 4, 2024          /s/ Andrew L. Fitzgerlad
                                   Andrew L. Fitzgerald, Esq., 31522
                                   andy@fhslitigation.com
                                   3737 Glenwood Avenue, Suite 375
                                   Raleigh, NC 27612
                                   (919) 863-9090
                                   (919) 863-9096 (Fax)
                                   *Counsel for Plaintiffs*

**THE PELS LAW FIRM**

                                   */s/ Jon D. Pels*
Dated:  September 4, 2024          /s/ Jon D. Pels
                                   Jon D. Pels, Esq. (CPF # 9312160037)
                                   ***Pro Hac Vice***
                                   jpels@pelslaw.com
                                   4833 Rugby Avenue
                                   3rd Floor
                                   Bethesda, MD 20814
         `                         (301) 986-5570
                                   (301) 986-5571 (Fax)
                                   *Counsel for Plaintiffs*